UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

APRIL S. MORGAN, as Administratrix of
the Estate of CHRISTOPHER JORDAN
LYNN MORGAN,

             Plaintiff,

      v.

OSHKOSH CORPORATION, *et al.*,

             Defendants.

_____

21-CV-779-LJV-HKS
DECISION & ORDER

## BACKGROUND

On June 6, 2019, Christopher Jordan Lynn Morgan ("Christopher"), a cadet at the

United States Military Academy at West Point, was killed when the army tactical vehicle

in which he was traveling rolled over.  Docket Item 1-1 at ¶ 6.  Following Christopher's

death, his mother and the plaintiff in this action, April S. Morgan ("Morgan"), was

appointed as administratrix of his estate.[1]  *Id.* at ¶ 2.  On May 26, 2021, Morgan filed

this action against Oshkosh Corporation and Oshkosh Defense, LLC ("Oshkosh"),[2] *id.*,

_____

[1] The appointment was made by the Surrogate's Court for Essex County, New
Jersey, which named Morgan as the *administratrix ad prosequendum* in July 2020.
Docket Item 1-1 at ¶ 2.  The same court issued letters of administration to Morgan in
May 2021.  Docket Item 1-1 at ¶ 2.

[2] Morgan brought this suit in New York State Supreme Court, Erie County.
Docket Item 1-1.  On July 2, 2021, the defendants removed the case to this Court on
the basis of diversity jurisdiction.  Docket Item 1 at ¶¶ 8-17; *see* 28 U.S.C. §§ 1332,
1441(a)-(b).

alleging that Oshkosh, the manufacturer of the vehicle that was transporting Christopher at the time of the fatal incident, was liable for his death because of its negligence, *id.* at ¶ 8, or based on strict liability, *id.* at ¶ 16.

On August 5, 2021, this Court referred the case to United States Magistrate Judge H. Kenneth Schroeder, Jr., for the determination of "all pre-trial matters" under 28 U.S.C. § 636(b)(1)(A).  Docket Item 6.  For nearly two years, the parties engaged in discovery.  *See, e.g.*, Docket Items 12-14, 31, 33-35, 44, 47; *see also* Docket Item 49-7 at ¶ 5.  By July 2023, however, the parties had come to an agreement about the disposition of the case, and on August 2, 2023, Morgan filed a petition asking this Court to approve a settlement.  Docket Item 49.

Under the terms of the proposed settlement, Oshkosh agreed to pay $775,000 in total, including $484,925.80 to Morgan and her husband Christopher Morgan as Christopher's "surviving parents and beneficiaries"; $258,333.33 in attorney's fees to Morgan's counsel, Lipsitz Green Scime Cambria LLP ("Lipsitz Green"); and an additional $31,740.87 to that same law firm for costs incurred.  Docket Item 49-10 at 3-4.  The settlement agreement provides that once those payments are made, Oshkosh will be "discharged and released from any and all further liabilities" related to the matter. *Id.* at 4.  Any future proceedings pertaining to Christopher Jordan Lynn Morgan's estate are to be handled in the Surrogate's Court for Essex County, New Jersey.  *Id.* at 4.

Shortly after Morgan filed the motion for settlement, Oshkosh moved to redact her motion and to "[e]nforce [c]onfidentiality in [the] [s]ettlement [a]greement."  Docket Item 51 at 1; *see also* Docket Item 51-1 (memorandum of law in support of motion). Morgan then filed a notice indicating that she did not oppose the defendants' motion.

2

Docket Item 52.  In a text order issued on September 1, 2023, Judge Schroeder granted the defendants' motion and ordered the Clerk of the Court to seal the motion for settlement.  Docket Item 53.

## LEGAL PRINCIPLES

"Wrongful death claims are one of the few types of civil lawsuits [in New York State] that require court approval for resolution by settlement."  *In re Seventh Jud. Dist. Asbestos Litig.*, 4 Misc. 3d 457, 460, 778 N.Y.S.2d 867, 869 (Sup. Ct. 2004).  Under New York's Estates, Powers and Trusts Law ("EPTL"), courts are required to "either disapprove . . . or approve in writing a compromise" in "an action for wrongful act, neglect[,] or default causing the death of a decedent."  EPTL § 5-4.6(a).  Both state supreme and federal district courts have jurisdiction to approve settlements under this section.  *Leslie v. Met Pro Techs., LLC*, 2019 WL 5783534, at *2 (N.D.N.Y. Mar. 1, 2019), *report and recommendation adopted*, 2019 WL 5783518 (N.D.N.Y. Mar. 26, 2019) (noting that federal district courts have "concurrent jurisdiction" to approve settlements under section 5-4.6(a)); *In re Est. of Haag*, 55 Misc. 3d 324, 332, 43 N.Y.S.3d 870, 878 (Sur. Ct. Broome Cnty. 2016).

The Local Rules of Civil Procedure for this Court reinforce the New York EPTL requirements.  Under Local Rule 41(a)(2), "[a]ctions brought on behalf of decedents' estates shall not be settled or compromised, or voluntarily discontinued, dismissed, or terminated, without application to and leave of [the] Court."[3]

---

[3] This rule further requires that any "application to settle . . . include a signed affidavit or petition by the estate representative and a signed affidavit by the representative's attorney" detailing the circumstances underlying the settlement and the

In deciding whether to approve a settlement in a wrongful death action, courts in this District "determine whether the proposed settlement is in the best interests of the estate and distributees." *Crout v. Haverfield Int'l, Inc.*, 348 F. Supp. 3d 219, 226 (W.D.N.Y. 2018) (Wolford, C.J.) (citation and internal quotations omitted). To make that determination, courts weigh five factors:

> (1) the circumstances giving rise to the claim, (2) the nature and extent of the damages, (3) the terms of the settlement and amount of attorneys' fees and other disbursements, (4) the circumstances of any other claims or settlements arising out of this same occurrence, and (5) the plaintiff's statement of why [the plaintiff] believes this settlement is in the best interest of the estate and the distributees.

*Crout*, 348 F. Supp. 3d at 226; *see also Durlak v. Medtronic, Inc.*, 2012 WL 2838764, at *1 (W.D.N.Y. July 10, 2012) (same).

## DISCUSSION

### I.   PROPOSED SETTLEMENT

After considering the factors outlined above and reviewing the parties' filings, the Court approves the proposed settlement.

First, the Court notes that both sides were assisted by experienced counsel and reached this agreement only after extensive litigation. Docket Item 49-7 at ¶ 5 (statement of attorney from Lipsitz Green swearing that counsel had "completely investigated the . . . incident and obtained the necessary records, death certificate[,] and expert opinions"; "exchanged" written materials; taken depositions; and engaged in "other various discovery procedures, including motion practice."). In light of the risks

---

reasons it should be approved. Local Rule 41(a)(2)(A). Morgan and her counsel have provided the required documents here. *See* Docket Items 49, 49-7.

and costs inherent in any litigation of this sort, courts will defer to the judgment of experienced counsel who negotiate at arm's length to reach an agreement beneficial to both sides.  *See Crout*, 384 F. Supp. 3d at 226 (finding wrongful death settlement negotiated by "experienced counsel" to be "fair and appropriate" given "the costs and inherent risks to both sides of a jury trial and the benefits of reaching a final resolution"); *see also Leslie*, 2019 WL 573534, at *2 (finding settlement appropriate when "it [was] unclear that a larger verdict could be obtained . . . were the matter to proceed all the way through trial" and noting that "by settling the matter at this juncture the [a]dministratrix of the [e]state removes any uncertainty as to the outcome, and saves the [e]state . . . significant expense").  Because that is what happened here, this Court will not second-guess the parties' and their counsels' judgment.

The provision for attorney's fees in the settlement agreement is also reasonable. Under the proposal, the plaintiff's counsel, Lipsitz Green, would receive $258,333.33 in attorney's fees—one-third of the total settlement.  Docket Item 49-10 at 3-4.  Under New York law, attorney's fees "not exceeding 33% of the sum recovered" in a wrongful death action are presumptively "reasonable."  22 N.Y. Comp. Codes R. & Regs. § 603.25(e); *see Gluck v. Sandelli*, 2022 WL 1556124, at *2 (S.D.N.Y. May 16, 2022) (citing this rule and approving fee award of exactly one-third of total settlement amount prior to the deduction of costs); *Est. of Marshall v. City of New York*, 2012 WL 2320764, at *2-3 (E.D.N.Y. June 19, 2012) (collecting cases).  This Court sees no reason to depart from that standard here, especially because this one-third recovery fee was included in the

retainer agreement between Morgan and her counsel.[4]  Docket Item 49-7 at ¶¶ 3-4;

Docket Item 56-1.  And while a court is not "bound by the terms of

such . . . [contingency fee] agreement[s]," it does consider them as "contract[s]

embodying the intent of the parties."  *Crout*, 348 F. Supp. 3d. at 227.

In addition to attorney's fees, Lipsitz Green will receive $31,740.87 as

"reimbursement of disbursements" under the proposed settlement.  Docket Item 49-10

at 4.  The firm seeks compensation for a variety of costs, including filing fees,

transcripts, expert services, and travel—in other words, for ordinary litigation expenses.

Docket Item 49-8.  The Court finds no issue with the repayment of those costs. *See*

*Gluck*, 2022 WL 1556124, at *2 (upholding an award of "reimbursement

[for] . . . standard litigation expenses" in addition to attorney's fees).

In sum, based on this Court's review of the underlying circumstances of this

case, the statements of Morgan and her counsel in support of the settlement, and the

applicable law, the Court finds the proposed settlement, Docket Item 49-10, to be fair

and reasonable.  The plaintiff's petition to approve the settlement, Docket Item 49,

therefore is GRANTED.

All further proceedings in the estate of Christopher Jordan Lynn Morgan,

including the entering of an "order of distribution of the net proceeds of the settlement,"

---

[4] The retainer agreement states that Morgan will pay Lipsitz Green a fee equal to "33 1/3% . . . of the sum recovered, whether recovered by judgment, settlement[,] or otherwise."  Docket Item 56-1 at 2.  The parties further agreed that Lipsitz Green would "pay all costs and expenses of this action" and remain liable "in the event the claim or action is dismissed or otherwise rejected" but that, in the event of a settlement, the attorney's fee would be "computed [based] on the gross sum recovered before deducting expenses and disbursements."  *Id.*

shall be completed in the Surrogate's Court for Essex County, New Jersey.  *See* Local Rule 41(a)(2)(D).

## II.    SEALING OF THE SETTLEMENT

As discussed above, after Morgan moved for the approval of the settlement, Docket Item 49, Oshkosh moved to seal that motion and to "[e]nforce [c]onfidentiality in [the] [s]ettlement [a]greement."  Docket Item 51 at 1.  Oshkosh asserted that the settlement reached by the parties "includ[ed] a term for confidentiality" and that the unredacted filing "risks breach of the agreement."[5]  Docket Item 51-1 at 2.  Morgan responded to the defendants' motion by stating that she did not oppose and in fact joined it.  Docket Item 52 at 1.  Judge Schroeder then granted Oshkosh's motion. Docket Item 53.

Neither party has explicitly asked this Court to seal its order granting or denying the motion for settlement.  But in asking the Court to enforce the confidentiality of the settlement agreement, Docket Items 51-52, both parties seem to suggest that this Court's order should be filed under seal or, at the very least, be redacted as to the settlement amount.

Those requests are in tension with the longstanding tradition of "public access to judicial documents"—a tradition that is "firmly rooted in our nation's history."  *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d. Cir. 2006).  Moreover, "the mere fact

---

[5] In an email to the defendants' counsel that was attached to Oshkosh's motion to seal, Morgan's counsel provided a slightly different interpretation of this term.  Docket Item 51-6 at 1.  She wrote that "[t]he terms of your release (which we accepted) contemplated Court approval of the settlement as a carve[-]out to the confidentiality provision as required for wrongful death suits."  *Id.*

that [a] settlement agreement contains a confidentiality provision is an insufficient interest to overcome the presumption that an approved . . . settlement agreement is a judicial record, open to the public." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 338 (S.D.N.Y. 2012) (citation and internal quotation marks omitted).  In other words, the fact that the parties have agreed to keep this settlement secret is not enough to justify its sealing.  Instead, "[i]t is this Court's obligation to do its own review, weighing the interests of the public's right to have access to a judicial document[] against the countervailing privacy interests at stake."  *Leslie*, 2019 WL 5783534, at *4.

### A.    Right of Access to Judicial Documents

"The notion that the public should have access to the proceedings and documents of courts is integral to our system of government."  *United States v. Erie Cnty.*, 763 F.3d 235, 238-39 (2d Cir. 2014).  This right of access to court records is "secured by two independent sources: the First Amendment and the common law." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 141 (2d Cir. 2016).  Whether a right attaches under either—or both—must be assessed separately, because "the analysis with respect to each is somewhat different."  *Id.*

To determine whether a right of access attaches to a filing, the court must first decide whether the record at issue constitutes a "judicial document."  *Id.*  The Second Circuit has explained that "the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access."  *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*"). Instead, "the item filed must be relevant to the performance of the judicial function and useful in the judicial process."  *Id.*

8

### 1.    Common Law Right of Access

"The common law right of public access to judicial documents . . . predate[s] the Constitution."  *Id.*  Under this tradition, "courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents."  *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) (footnote omitted).  If a court determines that a record is a "judicial document" to which a presumptive common law right of access attaches, it must then determine whether that presumption outweighs "competing considerations against it."  *Lugosch*, 435 F.3d at 120.

The court begins by considering the relative strength of the presumption of public access in a given case.  *Id.* at 119.  That requires the court to address two key factors: "the role of the material at issue in the exercise of Article III judicial power" and "the resultant value of such information to those monitoring the federal courts."  *Newsday LLC v. County of Nassau*, 730 F.3d 156, 165 (2d. Cir. 2013) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) ("*Amodeo II*")).  "Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance."  *Amodeo II*, 71 F.3d at 1049.  On the other side of the balance sheet are any "countervailing factors" that might counsel against granting public access, such as "the danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure."  *Lugosch*, 435 F.3d at 120 (citation and internal quotation marks omitted).

### 2.    First Amendment Right of Access

The public also has a "qualified First Amendment right to attend judicial proceedings and to access certain judicial documents."  *Hartford Courant Co. v. Pellegrino,* 380 F.3d 83, 91 (2d Cir.2004).  Courts in this Circuit have used "two different approaches" to determine whether the First Amendment right of access attaches. *Lugosch*, 435 F.3d at 120.  Under the first approach, the right applies if the documents at issue are of a kind that "have historically been open to the press and general public [and] . . . public access plays a significant positive role in the functioning of the particular process in question."[6]  *Id.* (quoting *Press-Enterprise Co. v. Super. Ct. of Calif. for Riverside Cnty.*, 478 U.S. 1, 8 (1986)).  Under the second approach, the right applies if the documents at issue are "derived from or are a necessary corollary of the capacity to attend the relevant proceedings."  *Id.* (alterations and citation omitted).

"A court's conclusion that a qualified First Amendment right of access to certain judicial documents exists does not end the inquiry."  *Id.* at 120.  A document to which a qualified constitutional right of access attaches may "be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest."  *Id.*  "Broad and general findings . . . are not sufficient to justify closure."  *Id.*

### B.    Application to this Case

As an initial matter, the Court finds that the documents that the parties want to seal—the settlement agreement itself and documents that contain information about the

---

[6] This approach is sometimes referred to as the "experience and logic" approach. *Lugosch*, 435 F.3d at 120.

settlement, including this order—are judicial documents.  Because this Court is required to approve the settlement under Local Rule 41(a)(2), the filings that the parties want to seal are necessarily "relevant to the performance of the judicial function" and certainly "useful in the judicial process."  *See Amodeo I*, 44 F.3d at 145.  Thus, they are "judicial documents" as defined by the Second Circuit.  *Id.*

The fact that the records at issue here relate to a settlement—that is, an agreement generally reached outside the courthouse—makes no difference.  Indeed, the Second Circuit held that even if a lawsuit is "settled without a judgment on the merits," that "does not impair the 'judicial record' status of pleadings."  *See Bernstein*, 814 F.3d at 140.  In *Bernstein*, the parties had obtained a temporary sealing order and had settled in the "apparent[] belie[f] that obtaining a stipulated dismissal before the expiration of the sealing order would ensure that the complaint would never see the light of day."  *Id.* at 138-39 (alternations and internal quotation marks omitted).  As here, the defendants moved to seal the relevant documents, and the plaintiff "support[ed] [the defendants'] position . . . so as not to risk unwinding the settlement."[7]  *See id.* Nevertheless, the court found that "[e]ven in the settlement context, the inspection of pleadings allows the public to discern the prevalence of certain types of cases, the nature of the parties to particular kinds of actions, information about the settlement rates in different areas of law, and the types of materials that are likely to be sealed."  *Id.* at 141 (alterations, citation, and internal quotation marks omitted).

---

[7] Of course, the Court does not know with any certainty why the plaintiff supports the defendants' motion here, but the impact on the parties' ability to reach a compromise seems a likely influence.

Unlike the documents at issue in this case, the documents in *Bernstein* were pleadings in a case that had settled, not the settlement documents themselves.  And it is true that "in many—if not most—cases, a settlement agreement would not qualify as a 'judicial document.'"  *Wolinsky*, 900 F. Supp. 2d. at 337.  But courts in this Circuit have distinguished settlements that were entered into privately from those that require court approval.  *Id.* at 337-38.  Settlement documents in cases requiring court approval have been found to be "'relevant to the performance of the judicial function and useful in the judicial process,' and thus [] 'judicial document[s]' subject to the presumption of access." *Id.* (citing *Lugosch,* 435 F.3d at 119); *Richards v. Cordis Corp.*, 2022 WL 602563, at *2 (N.D.N.Y. Mar. 1, 2022) (collecting cases).  Indeed, because settlements of wrongful death actions require court approval in New York, settlement agreements in wrongful death actions are generally treated as judicial documents.  *See Richard*s, 2022 WL 602563, at *1-2; *Leslie*, 2019 WL 5783518, at *3 (magistrate judge's recommendation on wrongful death settlement was "certainly a judicial document"); *In re E. 51st St. Crane Collapse Litig.*, 31 Misc. 3d 406, 408-09, 920 N.Y.S.2d 584, 587 (Sup. Ct. N.Y. Cnty. 2011) (wrongful death settlement agreement was a judicial record under New York, common, and constitutional law).

So the documents related to the settlement agreement here—and this decision approving that agreement—are judicial documents.  That finding necessarily "triggers a presumption of public access," which in turn means that this Court must "make specific, rigorous findings before sealing the document or otherwise denying public access." *Bernstein*, 814 F.3d at 140.  In other words, consistent with the approaches outlined

above, the Court must ensure that denying access would not violate common law or First Amendment rights. *See id.*; *Leslie*, 2019 WL 5783518, at *3.

But the Court is unable to make such "specific, rigorous findings" here. *Bernstein*, 814 F.3d at 140. There has been almost no briefing on this issue, and the parties have provided little reason that the documents should be sealed. Docket Item 51-1 at 2-3; Docket Item 52. The defendants' discussion of the legal basis for keeping the settlement confidential is quite short—a mere two pages—and focuses almost entirely on the fact that the parties *agreed* to "confidentiality" in reaching a settlement so that disclosure by the plaintiff might breach the agreement. Docket Item 51-1. And Morgan's response adds nothing to the mix.[8] Docket Item 52.

As the Second Circuit made clear in *Bernstein*, the mere fact that the parties have agreed that filings in a settled case will be confidential is not enough to overcome the presumption of public access.[9] *Bernstein*, 814 F.3d at 136. That is true even if parties seek to seal a settlement agreement with a confidentiality term that was "material to [a party's] decision to settle."[10] *Richards*, 2022 WL 602563, at *3-4 (denying

---

[8] Morgan's notice supporting the defendants' motion includes no legal analysis whatsoever. Docket Item 52. In fact, in an email attached to the defendants' motion in support of enforcing confidentiality, Morgan's counsel expressed some reservations about the legal basis for sealing. Docket Item 51-6 at 1. While stating that "if your client wants to move to redact the amount of settlement[,] we would not oppose it, in any way," she also noted that "[t]he Second [C]ircuit has a strong presumption against sealing petitions for settlement documents." *Id.* Nevertheless, she opined that "if your client[s] make[] a strong showing and present an affidavit in support, etc.[, a request to seal] may be successful." *Id.*

[9] And in fact, there is some suggestion in the papers that Morgan at least initially understood the confidentiality provision not to limit the parties' ability to publicly file a proposed settlement for the Court's approval. *See* note 5, *supra*.

[10] In *Hunter v. Shanghai Huangzhou Elec. Appliance Mfg. Co.*, 2021 WL 2188167 (N.D.N.Y. May 28, 2021), the court granted a limited motion to seal after both

13

parties' request to file settlement amount under seal).  Also insufficient is the fact that disclosure might put a party "at a significant and unfair disadvantage in . . . active settlement negotiations elsewhere."  *Id.* (internal quotation marks omitted).  So without more, this Court cannot approve the settlement's confidentiality provision here.

Because the parties have not yet had an opportunity to address this issue, the Court declines to decide it now.  Instead, it follows the approach of the Northern District of New York in *Leslie*, 2019 WL 5783518, at *3-4.  There, the court granted a motion to approve a settlement in a wrongful death case but declined to enter a final decision on the parties' motion to seal documents connected to that settlement.  *Id.*

Accordingly, this order—along with the motion for settlement and its attachments, *see* Docket Item 49—will be temporarily sealed until the parties have had a chance to address the factors relevant to this Court's decision to seal.  The parties shall file any motions for permanent sealing within 14 days of the date of this order.  If neither party makes such a motion, the temporary seal will be lifted.

## <u>CONCLUSION</u>

In light of the above, IT IS HEREBY

ORDERED that the motion for settlement, Docket Item 49, is APPROVED subject to the terms of this order; and it is further

---

the plaintiff and the defendant moved to keep the settlement agreement confidential.  *Id.* at 4.  But the court noted that its decision was based on the "the circumstances of this particular case" in which the parties supported the "redaction" of certain information based on "privacy concerns that the [c]ourt [found] to be legitimate and plausible."  *Id.* The court also noted that "the parties ha[d] not sought wholesale redaction of the settlement agreement, the petition to approve it, or the related proceedings," finding that "none of the concerns they cite would justify such wholesale sealing."  *Id.*

ORDERED that with the approval of the Surrogate's Court for Essex County, New Jersey, the plaintiff's attorneys, Lipsitz Green Scime Cambria LLP, are hereby authorized to distribute the gross settlement be paid and distributed as follows:

> To Lipsitz Green Scime Cambria LLP, as and for attorney's fees…………………………………………………………………$258,333.33

> To Lipsitz Green Scime Cambria LLP, as and for reimbursement of disbursements…………………………………………………………... $ 31,740.87

> To April S. Morgan and Christopher Morgan, as and for their share as surviving parents and beneficiaries of the decedent, or to any other beneficiaries of the estate of Christopher Jordan Lynn Morgan as determined by the Surrogate's Court for Essex County, New Jersey, for having sustained pecuniary loss, equal to 100% of the net settlement proceeds…………………………………$484,925.80

> Total……………………………………………………………………... $775,000.00

and it is further

ORDERED that the motion for settlement, Docket Item 49, and this order be temporarily SEALED as noted above.  The parties shall file any motions for permanent sealing within 14 (fourteen) days of the date of this order.  If no such motions are made, the Court will lift the seal; and it is further

ORDERED that all further proceedings in the estate of Christopher Jordan Lynn Morgan shall be completed in the Surrogate's Court for Essex County, New Jersey; and it is further

ORDERED that upon payment by the defendants of the sums specified above, the parties shall file with this Court a stipulation of discontinuance with prejudice.  This Court shall retain jurisdiction for purposes of enforcing its order and this settlement.

15

SO ORDERED.

Dated:   November 14, 2023
          Buffalo, New York


                                        _/s/ Lawrence J. Vilardo_
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE